**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| **VIRGIN GRAND ESTATES #60 VILLA ASSOCIATION a/k/a VIRGIN GRAND NO. 60 HOMEOWNERS ASSOCIATION,** )<br>)<br>)<br>) | |
| Plaintiff, ) | Case No. 3:21-cv-00074 |
| ) | |
| v. ) | |
| ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICIES NUMBERED GL-5218-028 AND NO. GL-5740-028; INTER-OCEAN INSURANCE AGENCY, ST. THOMAS, LLC; and, RED HOOK AGENCIES, INC.,** )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. )<br>) | |
| **INTER-OCEAN INSURANCE AGENCY, ST. THOMAS, LLC,** )<br>)<br>) | |
| Third-Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **CIMMARON PROPERTY MANAGEMENT, INC.,** )<br>)<br>) | |
| Third-Party Defendant. )<br>) | |

**APPEARANCES:**

**Douglas B. Chanco, Esq.**
Chanco Schiffer Law, LLC
Roswell, GA

**Kenneth R. Behrend, Esq.**
Behrend Law Group
Pittsburgh, PA
*Pro Hac Vice*
    *For Plaintiff*

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 2 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 2 of 18

**John P. Golden, Esq.**
**Gregory L. Mast, Esq**.
Fields Howell LLP
Miami, FL
>*For Defendants Certain Underwriters at Lloyd's, London*
>*Subscribing to Policy Nos. GL-5218-028 and GL-5740-028*
>*and Red Hook Agencies, Inc.*

**Scot F. McChain, Esq.**
USVI Law, LLC
Christiansted, VI

**Edward L. Barry, Esq**.
Edward L. Barry
Christiansted, VI
>*For Defendants Certain Underwriters at Lloyd's, London*
>*Subscribing to Policy Nos. GL-5218-028 and GL-5740-028,*
>*Red Hook Agencies, Inc., and Inter-Ocean Insurance Agency,*
>*St. Thomas, LLC/Third-Party Plaintiff Inter-Ocean Insurance Agency,*
>*St. Thomas, LLC*

**Michael L. Sheesley, Esq.**
Michael L. Sheesley, PC
St. Thomas, VI
>*For Third-Party Defendant Cimmaron Property Management, Inc.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

**BEFORE THE COURT** is Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy Nos. GL-5218-028 and GL-5740-028's Motion to Dismiss the First Amended Complaint and/or, alternatively, Motion to Strike (ECF No. 27) and memorandum of law in support thereof (ECF No. 28), filed November 24, 2021. Plaintiff filed a response to the motion on December 31, 2021. (ECF No. 41). Defendant filed a reply in further support of its motion on January 13, 2022. (ECF No. 45). For the reasons stated below, the Court will grant the motion to dismiss and deny the motion to strike.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff brings this civil action against Defendant Certain Underwriters at Lloyd's, London (Underwriters), alleging breach of contract and breach of the covenant of good faith and fair dealing, among other claims, and against Defendants Inter-Ocean Insurance Agency,

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 3 of 18

Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.
Case No. 3:21-cv-0074
Memorandum Opinion
Page 3 of 18

St. Thomas, LLC, (Inter-Ocean) and Red Hook Agencies, Inc., (Red Hook) alleging negligence and certain breaches of fiduciary and statutory duties. *See* First Amended Complaint (FAC) (ECF No. 18) at 2. Plaintiff also asserts a RICO claim against all Defendants. *Id*. at 71-72.

As alleged in the First Amended Complaint (FAC), Plaintiff claims that, through Inter-Ocean and Red Hook, it contracted with Underwriters for commercial general liability insurance beginning in 2011 and that such insurance policy was renewed annually. FAC at 11-13, 25.

Plaintiff was sued in January 2020 by an individual who claimed he suffered personal injuries on February 23, 2018, while working on repairs to Virgin Grand's property. *Id*. at 17-18. Through Inter-Ocean, Plaintiff requested that Underwriters defend the action, under its commercial general liability insurance policy. *Id*. at 18. However, Underwriters declined coverage, informing Plaintiff that it had been uninsured during the period of February 2, 2018, to March 11, 2018 – apparently, the dates between the expiration of Plaintiff's 2017 policy, which had not been renewed, and the effective date of its new 2018 policy. *Id*. Plaintiff acknowledges that Red Hook informed Inter-Ocean in January 2018 that Underwriters was willing to renew the insurance policy and the date that the 2017 policy was set to expire. *Id*. at 14. But, Plaintiff alleges, Inter-Ocean did not communicate with Plaintiff about the Underwriters' renewal until March 6, 2018. Further, Plaintiff avers that it was under the belief that the application it submitted in March 2018 was a renewal of the 2017 policy, that it believed that the renewal was timely with no gap in coverage, and that Plaintiff never was informed before it received Underwriters denial of coverage in April 2020 that the policy to which it agreed and for which it paid in March 2018 was a "new" policy and not a "renewal." *Id*. at 16-23.

According to Plaintiff, the personal injury lawsuit against it was settled. *Id*. at 24. Plaintiff brings this action against Underwriters for its failure to defend the lawsuit under the policy that Plaintiff believes it timely renewed and against Inter-Ocean and Red Hook for their failure to inform Plaintiff of the expiration date of the 2017 insurance policy and the fact that the 2018 policy was a new policy and not a renewal of the 2017 policy. Plaintiff claims damages for defending the personal injury lawsuit in excess of $90,000.00, not including the settlement amount. Inter-Ocean, in its third-party complaint, claims that it is

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 4 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 4 of 18

entitled to indemnification and/or contribution from Cimmaron Property Management, Inc., the property management company that manages the property on behalf of Plaintiff, for any damages awarded to Plaintiff assessed against Inter-Ocean.

Underwriters now moves to dismiss the claims filed by Plaintiff.

## II.  LEGAL STANDARD

### A. Failure to State a Claim - Rule 12(b)(6)

A complaint, or certain portions thereof, may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff*." In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d 300, 314 (3d Cir. 2010). The Court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F. 3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010), *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 5 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 5 of 18

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### B. Motion to Strike – Rule 12(f)

Pursuant to Federal Rules of Civil Procedure 12(f),

> [t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). As this Court has stated:

> The court has "considerable discretion" in striking an allegation. *United States v. Southland Gaming of the V.I., Inc.*, 182 F. Supp. 3d 297, 317 (D.V.I. 2016). "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Id.* (quoting *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 2009 U.S. Dist. LEXIS 101357, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009)). Generally, a Rule 12(f) motion "should not be readily granted absent a showing of prejudice to the movant." *Glasser v. Gov't of the V.I.*, 853 F. Supp. 852, 854, 30 V.I. 97 (D.V.I. 1994).

*Dorval v. Tinsley*, Civ. No. 19-23, 2020 U.S. Dist. LEXIS 7215, at *13 (D.V.I. Jan. 15, 2020). *See also, e.g., Luciano v. Teachers Ins. & Annuity Ass'n of Am. — Coll. Ret. Equities Fund*, Civil Action No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at *9 (D.N.J. Apr. 7, 2022) ("However, '[m]otions to strike are generally viewed with disfavor[] and will usually be denied unless the allegations in the pleading have no possible relation to the controversy[] and may cause prejudice to one of the parties.'" (citing *Gray v. BMW of N. Am.*, LLC, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (quoting *Sliger v. Prospect Mortgage, LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011))).

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 6 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 6 of 18

### III. DISCUSSION

Underwriters seeks to dismiss three counts of Plaintiff's FAC asserted specifically against Underwriters, namely, Count I – Breach of Contract, Count II -- Breach of the Duty of Good Faith and Fair Dealing, and Count III – Bad Faith, as well as the final count asserted against all Defendants, Count XII -- RICO Claim. The motion also moves to strike the allegations in the FAC that pertain to non-party Guardian General Insurance Ltd. (Guardian General). ECF No. 27 at 2 and 3.

***A. Motion to Dismiss***

**1. Count I – Breach of Contract**

The Supreme Court of the Virgin Islands has declared that, in the Virgin Islands, the elements of a claim for breach of contract include: "(1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 620 (Sup. Ct. 2017) (citing *Brouillard v. DLJ Mort. Capital, Inc.*, 63 V.I. 788, 797-98 (Sup. Ct. 2015) (citing *Arlington Funding Servs. v. Geigel*, 51 V.I. 118, 135 (Sup. Ct. 2009) after conducting a *Banks* analysis).

There is no dispute among the parties that they entered into a commercial general liability insurance agreement commencing February 1, 2017. *See* ECF No. 28-1 (hereinafter, 2017 policy). It is also undisputed that another insurance policy between the parties was in effect for the period March 12, 2018, to March 12, 2019. *See* ECF No. 28-2 (hereinafter, 2018 policy). Thus, the existence of these agreements between the parties is not at issue.

The Declaration Page of the certificate of insurance of the 2017 policy specifies that the policy is "[e]ffective from February 01, 2017 to February 01, 2018 both dates 12:01 a.m. standard time." ECF No. 28-1 at 2. In fact, Plaintiff alleges that the "commercial general liability policy had an effective date from February 1st of that year to the next year on February 1st." FAC at ¶¶ 210 and 236. Similarly, the Declaration Page of the certificate of insurance of the 2018 policy specifies that the policy is "[e]ffective from 3/12/2018 to 3/12/2019 both dates 12:01 a.m. standard time." ECF No. 28-2 at 2. Underwriters maintains that no contract existed between the parties between the effective dates of the two policies, and, therefore, that the "February 23, 2018[,] Incident occurred outside the policy period of

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 7 of 18

Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.
Case No. 3:21-cv-0074
Memorandum Opinion
Page 7 of 18

both Policies." ECF No. 28 at 8. Consequently, it argues, it cannot be liable to Plaintiff for breach of contract. *Id*. at 7-8.

Plaintiff opposes on the grounds that it effectively "renewed" its 2017 policy upon receiving a notice of renewal, a renewal application, and the amount of the premium in March 2018 and, thus, no lapse of coverage occurred. *See* FAC at ¶¶ 149-50; ECF No. 41 at 6. Plaintiff relies upon what it refers to as the parties "regular course of dealing" and "reasonable expectations" as a basis for its conclusion. *See* ECF No. 41 at 4-13.

As this Court has held, "[t]he interpretation, construction and legal effect of an insurance policy is a question to be determined by the court as a matter of law." *Coakley Bay Condo. Ass'n v. Continental Ins. Co.*, 770 F. Supp. 1046, 1050 (D.V.I. 1991) (citing *Berne v. Aetna Ins. Co.*, 604 F. Supp. 958 (D.V.I.), *aff'd*, 782 F. 2d 1026 (3d Cir. 1985)) (*cited in James v. Guardian Ins. Co.*, Civil No. SX-10-CV-435 69 V.I. 26, 33 (Super. Ct. 2015)). In addition, as noted by the *Coakley Bay* and *James* courts, the Virgin Islands Insurance Code specifically provides: "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." 22 V.I.C. § 846; *Coakley Bay*, 770 F. Supp. at 1050; *James*, 69 V.I. at 33.

Considering the insurance contracts at issue, the Court finds that both the 2017 policy and the 2018 policy are unambiguous on their face regarding the effective periods of the policies, providing coverage for the period from February 1, 2017, to February 1, 2018, and from March 12, 2018, to March 12, 2019, respectively. Upon review of both policies, the Court finds no language, clause, or provision that either extends the term of the 2017 policy in the event of an untimely attempt to renew or allows a "grace period" where an untimely attempt to renew would be effective to an earlier date for the 2018 policy.[1] Moreover, Plaintiff cites no statute or other rule or law that would inject or impute such language into

---

[1] In addition, any changes to the policy were possible only with Underwriters' consent and its issuance of an endorsement. See ECF No. 26-1 and -2 at 8 (page titled, "Common Policy Conditions," paragraph B: "This policy contains all the agreements between you and us concerning the insurance afforded. The First Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only be endorsement issued by us and made a part of this policy."). Plaintiff makes no allegation that such an endorsement was issued and made a part of the policy.

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 8 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 8 of 18

the insurance policy in support of its contention that the 2017 policy had not, in fact, expired on February 1, 2018, or that the 2018 policy was somehow effective prior to March 12, 2018.

Based upon the clear provisions of the agreements, the Court finds that the 2017 policy expired by its terms and, therefore, that Plaintiff was without coverage between February 1, 2018, to March 12, 2018, and specifically that no contract existed on the date of February 23, 2018. Because the Court finds the effective dates of the policies unambiguous, it is unnecessary for the Court to consider the parties' course of dealing or Plaintiff's "reasonable expectations," and the Court finds Plaintiff's appeal thereto unavailing. *See, e.g., Coakley Bay*, 770 F. Supp. at 1050 ("'When the parties to an agreement reduce their understanding to a writing that uses clear and unambiguous terms, a Court should look no further than the writing to give effect to that understanding'" (quoting *Brokers Title Co. v. St. Paul Fire and Marine Ins. Co.*, 610 F. 2d 1174, 1178 (3d Cir. 1979)); *see also Devcon Int'l Corp. v. Reliance Ins. Co.*, Civil No. 2001-201, 2007 U.S. Dist. LEXIS 84283, at *7-9 (D.V.I. Nov. 9, 2007) (where this Court categorically rejects the argument that the "reasonable expectations" doctrine should be applied when the terms of the insurance contract are unambiguous).[2]

Even if the Court would consider the parties' course of dealing, the facts as alleged by Plaintiff demonstrate that Plaintiff had not renewed the 2017 policy. Plaintiff recounts that during the years preceding 2018, Underwriters would inform Red Hook of their decision to renew the insurance; Red Hook would notify Inter-Ocean of Underwriters' decision; then, Inter-Ocean would communicate with Cimmaron. ECF No. 41 at 11-13. Plaintiff, in its First Amended Complaint, acknowledges that Red Hook sent Inter-Ocean notice of Underwriters'

---

[2] Indeed, where the terms of a contract or agreement are unambiguous, "resort to extrinsic evidence is 'unnecessary and even inappropriate.'" *Korsun v. Guardian Ins. Co.*, 1:18-cv-00047, 2021 U.S. Dist. LEXIS 204077, at *6 (D.V.I. Oct. 22, 2021) (quoting *McDonald v. Davis*, 51 V.I. 573, 590 (D.V.I. 2009)). Despite Plaintiff's citations to legal treatises and caselaw that purportedly support its position, *see* ECF No. 41 at 5-8, the Court finds the authorities so cited are outdated, apply principles followed in other jurisdictions, or involve facts that are not present in this case; thus, the holdings therein are not controlling in this jurisdiction nor binding upon this Court. Plaintiff does not present any caselaw or other authority where a court in this jurisdiction entertained evidence of "custom" or "general course of dealing" or "reasonable expectations" to interpret an insurance contract where the terms of the contract were found to be, as here, unambiguous.

Case: 3:21-cv-00074-RAM-RM   Document #: 92   Filed: 09/28/22   Page 9 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 9 of 18

decision to renew and the expiration date of the 2017 policy. *See* FAC at ¶¶ 56, 74.[3] Plaintiff cannot show that Underwriters was under any further duty thereafter.

Regarding Plaintiff's allegation that "Defendants materially altered the renewal application submitted by Virgin Grand to Inter-Ocean, by drawing a black-marker line through the 'renewal' request and the policy number, and placing a black-marker checkmark on the 'New' response line," (Doc. 18, ¶¶ 116; Ex. 30, 32), the Court finds that had no alleged change been made to the application, it would not affect the actual nature of the contracts or the explicit effective dates of either the 2017 or 2018 policy. In the absence of a timely, effective renewal, the 2017 policy expired *by its terms* at 12:01 a.m. on February 1, 2018. Thus, any application submitted thereafter could not have been a "renewal" application, since, after the expiration of the 2017 policy, no contract existed to renew.

Moreover, even if the application submitted to Underwriters by Plaintiff in March 2018 was marked as "renewal" on the form and such identification was controlling,[4] the application cannot be considered as evidence unless it is "attached to or otherwise made a part of the policy." 22 V.I.C. § 808. Nothing in the record indicates that the March 2018 application was attached to or otherwise made a part of the policy issued for the period March 12, 2018, to March 12, 2019. *See, e.g.*, ECF No. 28-2.

In the alternative, Plaintiff claims that Underwriters breached the 2017 policy by not complying with the cancellation and nonrenewal provision therein. FAC at ¶¶ 155-58. However, the Court finds that Underwriters had no obligation to comply with the requirements of that provision because it never canceled the policy, nor did it determine not to renew. As Plaintiff alleges, Underwriters notified its agent/coverholder in this transaction,

---

[3] Paragraph 74 of the FAC alleges:

> On January 10, 2018, Red Hook sent an email to Inter-Ocean informing Inter-Ocean of Lloyd's willingness to renew the Virgin Grand commercial general liability policy and a quote for the new annual premium amount, so that Inter-Ocean would inform Virgin Grand of Lloyd's willingness to renew the policy, and send a renewal application along with an invoice for the annual premium amount, as well as the date and time that the 2017 policy would expire, if not renewed by Virgin Grand. See Exhibit 16, Bates No. CPM 275-276.

[4] Plaintiff attaches a copy of the application to the FAC at Exhibit 24. The application is dated "03/06/2018." Additionally, while the "renew" box under the heading "Status of Transaction" is checked, the next section, titled "Package Policy Information," the "proposed eff[ective] date" and "propose exp[iration] date" written in are "3/12/18" and "3/12/19," respectively. Plaintiff does not make any allegations or provide evidence regarding the person who supplied the proposed dates.

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 10 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 10 of 18

Red Hook, that it would renew the policy. Red Hook, in turn, notified Plaintiff's broker/agent, Inter-Ocean, of Underwriters' decision to renew. FAC at ¶ 74.

The allegations here are similar to those presented in *Burlington Ins. Co. v. PK & JK, Inc.*, Case No.: 8:07-cv-2204-T-24-TBM, 2009 U.S. Dist. LEXIS 334 (M.D. Fla. Jan. 9, 2009). There, the court states:

> PK & JK does not dispute the fact that there was a lapse in coverage from November 8, 2005 through and including November 20, 2005, or that Thompson's alleged injuries occurred during that lapse in coverage on November 11, 2005. Rather, PK & JK contends that the policy required Burlington to notify it directly of the renewal premium (rather than notifying TAPCO) because PK & JK could not timely accept Burlington's offer of renewal until it received that notice. PK & JK points to Subsection (B)(2) of the section of the policy entitled "Florida Changes-Cancellation and Nonrenewal," which reads:
>
> NONRENEWAL
>
> > 1. If we decide not to renew this policy we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason for nonrenewal, at least 45 days prior to the expiration of this policy[.]
> > 2. Any notice of nonrenewal will be mailed or delivered to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.
>
> PK & JK urges the Court that this provision of the policy, although applicable to notice of *nonrenewal* and not notice of *renewal premiums,* logically should be interpreted to impose on Burlington a duty to provide notice directly to PK & JK of the quote for the renewal premium.

*Id*. at *4-5. The court continues, concluding:

> that PK & JK has not shown that Burlington had a duty, either contractually or by law, to deliver its renewal premium quote directly to PK & JK. The policy provision relied upon by PK & JK clearly applies only to notices of nonrenewal in the case of Burlington's decision not to renew the policy. It does not apply to instances such as in this case when the insured has not yet notified the insurer of its decision to renew, nor does it impose a duty on Burlington to provide notice of renewal premiums directly to PK & JK. The Court must construe the contract "in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson,* 756 So. 2d 29, 34 (Fla. 2000). Notably, PK & JK does not contend that any provision in the

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 11 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 11 of 18

> policy is ambiguous and even concedes that "[t]he policy is silent as to how Burlington would notify its insured of the renewal premium."
>
> The Court also rejects PK & JK's argument that notification of the renewal premium was a non-delegable duty because, as the Court has already found, Burlington did not have any such duty. And, even if it did have that duty, PK & JK has not shown that it could not be delegated to Burlington's agent, TAPCO.

*Id*. at *6-7. This Court similarly finds that the provision regarding cancellation and nonrenewal is inapplicable where Underwriters had, in fact, agreed to renew the policy, but where Plaintiff, the insured, had not yet notified it of its decision to renew, nor will the Court, like the *PK & JK* court, read into the policy a duty that is not specified therein.

The Court reiterates that, for a claim of breach of contract, only such duties that are found in or imposed by the contract can be breached. Underwriters declares that Plaintiff is charged with knowing the contracts it enters. ECF Nos. 28 at 7, 45 at 9. *See also Barber v. R & R Realty, Inc.*, SX-15-SM-155, 2017 V.I. LEXIS 54, at *11 (Super. Ct. Jan. 23, 2017) ("'[A]bsent an allegation of fraud or incompetence a person has a duty to read a contract before signing it and his failure to do so will not excuse his ignorance of its contents.'" (citing *Armstrong Motors v. Lewis*, Civil No. 803/1989, 1990 V.I. LEXIS 41, at *6 (Terr. Ct. Nov. 19, 1990)). The Court agrees.[5] Plaintiff's contention that fraud was somehow perpetrated to "change" the application from a "renewal" application to a "new" application is unavailing. ECF No. 41 at 9-12. "'Fraud' is defined as 'a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment.'" *Barber*, 2017 V.I. LEXIS 54, at *10 (footnote and citation therein omitted). Nowhere does Plaintiff describe or allege how the alleged redesignation of its application "induced Plaintiff to act to its detriment." Plaintiff completed the application on or about March 6, 2018. ECF Nos. 18-22, 18-24. By that date, the 2017 policy already had expired *by its terms* on February 1, 2018. Plaintiff does not claim that submitting the application in March 2018 was detrimental to Plaintiff. In addition, Plaintiff fails to show how the 2018 policy was "materially different" from the insurance for which Plaintiff applied. ECF No, 41 at 10-11. The application, dated March 6, 2018, submitted over a month after the 2017 policy had expired by its terms, was for commercial general

---

[5] Moreover, Plaintiff acknowledges that it knew the effective dates of the 2017 policy. *See* FAC at ¶¶ 210, 236.

Case: 3:21-cv-00074-RAM-RM   Document #: 92   Filed: 09/28/22   Page 12 of 18

Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.
Case No. 3:21-cv-0074
Memorandum Opinion
Page 12 of 18

liability insurance. Plaintiff fails to explain what was materially different in the insurance coverage provided under the 2018 policy from the insurance contemplated by Plaintiff when it submitted the application.

In the absence of a valid insurance contract during the period between February 1, 2018, and March 12, 2018, Underwriters had no duty to Plaintiff during that period and Plaintiff cannot maintain a claim for any alleged breach of contract for Underwriters' denial of coverage for an incident occurring on February 23, 2018. Consequently, the Court will grant Underwriters' motion as to Count I.

### 2. Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

As this Court has articulated, "In the Virgin Islands, every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Smith v. Meade*, Civil No. 2021-76, 2022 U.S. Dist. LEXIS 53161, at *9 (D.V.I. Mar. 24, 2022) (quoting *Arvidson v. Bucher*, 71 V.I. 277, 336 (Super. Ct. Sept. 10, 2019) (internal quotation marks omitted by *Smith*)). The elements of the claim include: "'(1) the existence of a valid contract between the parties, and (2) that defendant committed acts that "amount to fraud or deceit or an unreasonable contravention of the parties' reasonable expectations under the contract."'" *Smith*, 2022 U.S. Dist. LEXIS 53161, at *9-10 (quoting *Arvidson*; but also citing *Remak v. Virgin Islands Water & Power Auth.*, 2017 V.I. LEXIS 115, 2017 WL 3122642, at *2, 4 (V.I. Super. July 21, 2017) (concluding that the standard for proving a claim for breach of the implied covenant of good faith and fair dealing in the Virgin Islands remains unclear because the Virgin Islands Supreme Court has not clarified whether a *Banks* analysis must always be performed to establish binding precedent)).

To support this claim, Plaintiff alleges, among other things, that Underwriters breached this implied covenant by "unreasonably" denying coverage for the February 23, 2018, personal injury claim.[6] While Plaintiff is correct that "Virgin Island's Law [sic]

---

[6] Specifically, Plaintiff alleges:

> Defendant breached the implied covenant of good faith and fair dealing by: a. Denying coverage unreasonably, and without proper cause, on the basis that Virgin Grand caused the policy to lapse in February of 2018 by failing to return the renewal application on a timely basis, when in fact, Virgin Grand promptly returned the renewal application within two days of receipt of the renewal application which was sent by Inter-Ocean on behalf of Lloyd's on March 6, 2018; b. Denying Virgin Grand's claim without conducting a fair, unbiased and

Case: 3:21-cv-00074-RAM-RM   Document #: 92   Filed: 09/28/22   Page 13 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 13 of 18

recognizes that the breach of a party's contractual duty of good faith and fair dealing is separate and distinct from breach of contract," ECF No. 41 at 18, it is also true that for Plaintiff to maintain this claim, a valid contract first must exist.[7]

As set forth in the FAC, Plaintiff's claim asserted in Count II is based upon Underwriter's denial of Plaintiff's claim and request to defend the 2020 personal injury lawsuit against it. Most of the allegations recited in Plaintiff's FAC regarding this count are conclusions and not assertions of fact which the Court rejects. The Court has found herein that Underwriters did not breach the insurance contract, because no contract existed between the expiration of the 2017 policy on February 1, 2018, and the March 12, 2018, effective date of the 2018 policy. Because no contract existed on the date the incident underlying the personal injury suit occurred, namely February 23, 20218, Underwriters did not have a duty to defend that claim. Consequently, Underwriters did not breach and could not have breached any implied duty of good faith and fair dealing when it denied Plaintiff's request to defend the personal injury lawsuit.

### 3. Count III – Insurer Bad Faith

"In the Virgin Islands, the tort of bad faith typically arises in the context of insurance contracts where insurers owe a duty of good faith and fair dealing to their insured." *Donovan*

---

thorough investigation or inquiry, arbitrarily and capriciously, and/or with knowledge that the denial was unreasonable under the policy; c. Denying Virgin Grand's claim by misrepresenting to Virgin Grand that Inter-Ocean sent a renewal application on January 10, 2018, when, in fact, Inter-Ocean did not send the renewal application to Virgin Grand until March 6, 2018; d. Denying Virgin Grand's claim by misrepresenting to Virgin Grand that the 2017 policy lapsed before the renewal premium amount was provided and the renewal application was sent to Virgin Grand on March 6, 2018; e. Denying Virgin Grand's claim by misrepresenting to Virgin Grand that the 2017 policy was able to be lapsed by Lloyd's without Lloyd's first sending a notice of nonrenewal thirty days prior to expiration of the policy; -32-
f. Compelling Virgin Grand to initiate litigation to recover policy benefits to which it is entitled;
g. By misrepresenting to Virgin Grand that in March of 2018 a renewal policy application was accepted when in actuality the renewal application was altered by either Red Hook and/or Inter-Ocean and instead a new policy application was submitted to Lloyd's without any notice being provided to Virgin Grand of the alteration to the application and without approval being obtained from Virgin Grand to alter the renewal application.

FAC at ¶ 164.
[7] Underwriters bases its motion to dismiss Counts II and III on the "gist of the action" doctrine. ECF No. 28 at 9-11. Although, the Court does not analyze the counts through the lens of "gist of the action," it does come to the same conclusion: that for both Count II and Count III, Plaintiff first must establish the existence of an insurance contract, which is factual and legally impossible given the specific terms of the 2017 and 2018 insurance policies at issue and, thus, both counts must be dismissed.

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 14 of 18

Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.
Case No. 3:21-cv-0074
Memorandum Opinion
Page 14 of 18

*v. A.H. Riise Gift Shop*, Case No. ST-94-CV-681, 2018 V.I. LEXIS 169, at *8-9 (Super. Ct. May 15, 2018) (citing *Justin v. Guardian Ins. Co.*, 670 F. Supp. 614, 616, 23 V.I. 278 (D.V.I. 1987)). Even though the tort at times has been conflated with the tort of breach of implied duty of good faith and fair dealing,[8] it is recognized in the Virgin Islands as a separate tort. Recently, the Superior Court of the Virgin Islands reiterated the elements of the claim for bad faith set forth by this Court in *Justin*:

> "[I]n the Virgin Islands, in order to make out a cause of action for the tort of bad faith a plaintiff will be required to show: 1) the existence of an insurance contract between the parties and a breach by the insurer; 2) intentional refusal to pay the claim; 3) the nonexistence of any reasonably legitimate or arguable reason for the refusal (debatable reason) either in law or fact; 4) the insurer's knowledge of the absence of such a debatable reason or 5) when the plaintiff argues that the intentional failure results from the failure of the insurer to determine the existence of an arguable basis, the plaintiff must prove the insurer's intentional failure to determine the existence of such a debatable reason."

*Williams v. Inter-Ocean Ins. Agency*, Case No.: SX-18-CV-27, 2020 VI SUPER 89U, at *26-27 (Super. Ct. Oct. 23, 2020) (quoting *Justin*, 23 V.I. at 282).

Again, fundamental to Plaintiff's claim is the existence of an insurance contract and a concomitant breach thereof. As found herein, Plaintiff has failed to allege a plausible claim that an insurance contract existed during the period between February 1, 2018, and March 12, 2018. Therefore, Underwriters did not breach any contract, nor did it act in bad faith when it denied Plaintiff's claim related to the personal injury suit where the underlying incident occurred on February 23, 2018. *See, e.g., Davies v. Certain Underwriters at Lloyds of London*, CASE NO. ST-2W 5-01-0000637, 2017 V.I. LEXIS 138, at *23 n.60 (Super. Ct. Aug. 25, 2017) (where the court found that the defendant did not breach its contractual duty under the insurance policy and further found, "Similarly, Plaintiff cannot allege a valid claim for the

---

[8] *See, e.g., Roebuck v. Virgin Islands Hous. Auth.*, 60 V.I. 137, 145-46 (Super. Ct. 2014) (where the court states, "Plaintiff's claims of bad faith and unfair dealing are analyzed pursuant to the provisions of RESTATEMENT (SECOND) OF CONTRACTS § 205: "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." To state a claim for breach of the implied duty of good faith and fair dealing in the Virgin Islands, a plaintiff must allege: "(1) that a contract existed between the parties, and (2) that, in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the reasonable expectations of the parties" (citing *LPP Mortgage Ltd. v. Prosper*, 50 V.I. 956, 960-61 (D.V.I. 2008)) (footnote omitted)).

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 15 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 15 of 18

tort of bad faith because the tort relies on an insured demonstrating that an insurer breached an insurance contract" (citing *Justin*, 670 F. Supp. at 617)).

### 4. Count XII – RICO Claim

Underwriters moves to dismiss the RICO claim on the grounds that "it is pre-empted by the McCarran–Ferguson Act." ECF No. 28 at 15. Underwriters also argues that Plaintiff has failed to allege sufficient facts to state a viable RICO claim. *Id.* at 16-19.[9] The Court turns to the elements of a RICO claim, first.

> A claim alleging a pattern of racketeering under Civil RICO, 18 U.S.C. § 1962(c), requires proof of four elements: (1) the existence of an enterprise engaged in or affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that the defendant participated through a pattern of racketeering activity that must include the allegation of at least two racketeering acts.

*Munsif v. Cassel*, 331 Fed. App'x 954, 958 (3d Cir. 2009) (citing *Annulli v. Panikkar,* 200 F. 3d 189, 198 (3d Cir. 1999)).

According to Plaintiff, the "predicate" criminal acts underlying its RICO claim are mail fraud and wire fraud. FAC at ¶ 344. Underwriters takes issue with Plaintiff's failure to meet the heightened pleading standard for alleging fraud. Underwriters also contends that Plaintiff has failed to allege an "enterprise," as contemplated by the statute.

The Court agrees that Plaintiff has not adequately alleged an enterprise. As the United States Supreme Court has articulated, an enterprise is an "entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. . . . [that] is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Here, Plaintiff alleges:

> Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically: Defendants

---

[9] In response to Underwriters' motion, Plaintiff refers the Court to another document, namely, its response to a motion filed by a different defendant, and attempts to "incorporate by reference" its arguments contained therein. *See* ECF No. 41 at 21. The Court agrees with Underwriters that this reference to another document for this purpose is procedurally improper and an attempt to circumvent the local rule governing page limits. *See* ECF No. 45 at 17-18. Thus, the Court deems Plaintiff's opposition as nonresponsive to this part of Underwriters' motion and did not review or consider the referenced document as part of this opinion.

Case: 3:21-cv-00074-RAM-RM   Document #: 92   Filed: 09/28/22   Page 16 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 16 of 18

> unilaterally amending and processing an application for insurance without informing plaintiff. Defendants failed to renew insurance but instead creating a new insurance policy without informing plaintiff.

FAC ¶ 343. Nowhere does Plaintiff allege or explain how Defendants agreed or "associated together" for this "common purpose" or make any allegations that Defendants "function as a continuing unit." It is undisputed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S., at 555, 557).

Moreover, Plaintiff fails to allege, as argued by Underwriters, that Defendants were conducting the "'"*enterprise's* affairs," not just their *own* affairs.'" ECF No. 28 at 17 (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001) (emphasis in original) (internal quotation omitted)).

Assuming *arguendo* that Plaintiff has or can allege facts sufficient to establish the first three elements of the claim, the Court further finds that Plaintiff fails to allege facts adequate to establish the fourth element, that is, Plaintiff fails to allege facts that show a "pattern of racketeering activity." "To plead a pattern of racketeering activity, a plaintiff must aver, among other things, that each defendant committed at least two acts of prohibited racketeering activity, and that the predicate acts *amount to or pose a threat of continued criminal activity*." *Munsif*, 331 Fed. App'x at 958 (citing *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 240 (1989)) (emphasis added). The Third Circuit elucidates in *Germinaro v. Fidelity Nat'l Title Ins. Co.*, 737 Fed. App'x 96 (3d Cir. 2018):

> The requirement that the predicate acts "amount to or pose a threat of continued criminal activity" is commonly known as the "continuity" requirement. *Id.* Continuity comes in two forms: closed-ended and open-ended. *Id.* Closed-ended continuity refers "to a closed period of repeated conduct," and it "can be established by 'proving a series of related predicates extending over a substantial period of time.'" *Id.* (quoting *H.J., Inc.*, 492 U.S. at 241-42). Open-ended continuity, on the other hand, refers "to past conduct that by its nature projects into the future with a threat of repetition," *id.*, and it can "be established by proving a threat of continuity, which exists where the predicate acts themselves involve threats of long-term racketeering activity, or where the predicate acts are part of an entity's regular way of doing business."

Case: 3:21-cv-00074-RAM-RM   Document #: 92   Filed: 09/28/22   Page 17 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 17 of 18

*Id*. at 102 (quoting *United States v. Pelullo*, 964 F.2d 193, 208 (3d Cir. 1992)).

Here, Plaintiff does not allege facts sufficient to demonstrate closed-ended continuity. Plaintiff alleges that Underwriters has provided commercial general liability insurance since 2011. FAC at ¶¶ 135-36. According to Plaintiff, the alleged "fraud" of "unilaterally amending and processing an application for insurance without informing plaintiff. . . . [f]ail[ing] to renew insurance but instead creating a new insurance policy without informing plaintiff," FAC at ¶ 343, occurred one time, with regard to the "renewal" of the 2017 policy. Nowhere in the FAC does Plaintiff allege or even hint at repeated or long-term criminal conduct or the possibility of continued criminal activity. *See, e.g., Germinaro*, 737 Fed. App'x at 102 ("[T]he alleged nine-and-a-half-month period of alleged racketeering activity is insufficient as a matter of law to establish closed-ended continuity because activity covering less than twelve months does not constitute a substantial period of time."); s*ee also Hollis-Arrington v. PHH Mortg. Corp.*, 205 Fed. App'x 48, 54 (3d Cir. 2006) (where the court finds that the plaintiff failed to allege a "pattern of racketeering activity," stating, "To plead a pattern of racketeering activity, Hollis-Arrington must aver not only that each defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to or pose a threat of continued criminal activity. . . . 'A short term scheme threatening no future criminal activity will not suffice.' . . . Where the allegations of the complaint, taken as true, do not support the existence of either long-term criminal conduct or the threat thereof, dismissal is appropriate" (citations omitted)). In *Hollis-Arrington*, the court identified "two distinct time frames." 205 Fed. App'x at 54. Here, the allegations relate to only one incident with no threat of future criminal activity. Nor does Plaintiff demonstrate open-ended continuity. Nothing in the FAC alleges, suggests, or implies that the alleged mail and/or wire fraud "are a part of [Defendants'] regular way of doing business." *Germinaro*, 737 Fed. App'x at 102 (citation and internal quotations marks omitted). Based upon the absence of facts demonstrating continuity, Plaintiff has not adequately pled a "pattern of racketeering activity." Consequently, the Court finds that Plaintiff has failed to state a civil RICO claim[10] and will grant Underwriters' motion as to this count of the FAC.

---

[10] Because the Court so finds, it does not reach the question of McCarran–Ferguson Act pre-emption.

Case: 3:21-cv-00074-RAM-RM Document #: 92 Filed: 09/28/22 Page 18 of 18

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 18 of 18

### B. Motion to Strike

In the alternative to its motion to dismiss, Underwriters moves to strike the allegations in the FAC regarding non-party Guardian General Insurance, Ltd. (Guardian General). Underwriters declares that those allegations, ¶¶ 65-82 of the FAC, "address a completely unrelated insurer, Guardian General, and a completely unrelated insurance claim submitted by the Plaintiff." ECF No. 28 at 20. Plaintiff counters that the allegations show the relationship between Plaintiff and Inter-Ocean and thus support their claims against Inter-Ocean and Red Hook. ECF No. 41 at 28.

Because the Court will dismiss the counts of the complaint pertaining to Underwriters, the Court need not consider Underwriters' alternative motion to strike and will deny it.

### IV. CONCLUSION

Based upon the Court's finding that no insurance contract existed between Plaintiff and Underwriters on February 23, 2018, the Court finds that Plaintiff has failed to state claims in Counts I, II, and III of its FAC and will grant Underwriter's motion to dismiss those counts. The Court also finds that Plaintiff has failed to state a valid civil RICO claim and will grant Underwriter's motion to dismiss Count XII of the FAC. In the absence of any claims against Underwriters, the Court will deny the motion to strike. An appropriate order follows.

**Dated:** September 28, 2022            /s/ *Robert A. Molloy*
                                                         **ROBERT A. MOLLOY**
                                                         **Chief Judge**