## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| **VIRGIN GRAND ESTATES #60 VILLA ASSOCIATION a/k/a VIRGIN GRAND NO. 60 HOMEOWNERS ASSOCIATION,** | ) ) ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 3:21-cv-00074** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICIES NUMBERED GL-5218-028 AND NO. GL-5740-028; INTER-OCEAN INSURANCE AGENCY, ST. THOMAS, LLC; and, RED HOOK AGENCIES, INC.,** | ) ) ) ) ) ) ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| **INTER-OCEAN INSURANCE AGENCY, ST. THOMAS, LLC,** | ) ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CIMMARON PROPERTY MANAGEMENT, INC.,** | ) ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |
| | ) | |

APPEARANCES:

**Douglas B. Chanco, Esq.**
Chanco Schiffer Law, LLC
Roswell, GA

**Kenneth R. Behrend, Esq.**
Behrend Law Group
Pittsburgh, PA
*Pro Hac Vice*
        For Plaintiff

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 2 of 15

**John P. Golden, Esq.**
**Gregory L. Mast, Esq**.
Fields Howell LLP
Miami, FL
          *For Defendants Certain Underwriters at Lloyd's, London*
          *Subscribing to Policy Nos. GL-5218-028 and GL-5740-028*
          *and Red Hook Agencies, Inc.*

**Scot F. McChain, Esq**
USVI Law, LLC
Christiansted, VI
**Edward L. Barry, Esq**.
Edward L. Barry
Christiansted, VI
          *For Defendants Certain Underwriters at Lloyd's, London*
          *Subscribing to Policy Nos. GL-5218-028 and GL-5740-028,*
          *Red Hook Agencies, Inc., and Inter-Ocean Insurance Agency,*
          *St. Thomas, LLC/Third-Party Plaintiff Inter-Ocean Insurance Agency,*
          *St. Thomas, LLC*

**Michael L. Sheesley, Esq.**
Michael L. Sheesley, PC
St. Thomas, VI
          *For Third-Party Defendant Cimmaron Property Management, Inc.*

## **MEMORANDUM OPINION**

**MOLLOY, Chief judge**

      **BEFORE THE COURT** is Defendant Red Hook Agencies, Inc.'s Motion to Dismiss the First Amended Complaint and/or, alternatively, Motion to Strike (ECF No. 25) and memorandum of law in support thereof (ECF No. 26), filed November 23, 2021. Plaintiff filed a response to the said motion on December 13, 2021. (ECF No. 36). Said Defendant filed a reply in further support of its motion on January 7, 2022. (ECF No. 44). For the reasons stated below, the Court will grant in part and deny in part the motion.

### **I. FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff brings this civil action against Defendant Certain Underwriters at Lloyd's, London (Underwriters), alleging breach of contract and breach of the covenant of good faith and fair dealing, among other claims, and against Defendants Inter-Ocean Insurance Agency,

St. Thomas, LLC, (Inter-Ocean) and Red Hook Agencies, Inc., (Red Hook) alleging negligence and certain breaches of fiduciary and statutory duties. *See* First Amended Complaint (FAC) (ECF No. 18) at 2. Plaintiff also asserts a RICO claim against all Defendants. *Id.* at 71-72.

As alleged in the First Amended Complaint (FAC), Plaintiff claims that, through Inter-Ocean and Red Hook, it contracted with Underwriters for commercial general liability insurance beginning in 2011 and that such insurance policy was renewed annually. FAC at 11-13, 25.

Plaintiff was sued in January 2020 by an individual who claimed he suffered personal injuries on February 23, 2018, while working on repairs to Virgin Grand's property. *Id.* at 17-18. Through Inter-Ocean, Plaintiff requested that Underwriters defend the action, under its commercial general liability insurance policy. *Id.* at 18. However, Underwriters declined coverage, informing Plaintiff that it had been uninsured during the period of February 2, 2018, to March 11, 2018 – apparently, the dates between the expiration of Plaintiff's 2017 policy, which had not been renewed, and the effective date of its new 2018 policy. *Id.* Plaintiff acknowledges that Red Hook informed Inter-Ocean in January 2018 that Underwriters was willing to renew the insurance policy and the date that the 2017 policy was set to expire. *Id.* at 14. But, Plaintiff alleges, Inter-Ocean did not communicate with Plaintiff about the Underwriters' renewal until March 6, 2018.  Further, Plaintiff avers that it was under the belief that the application it submitted in March 2018 was a renewal of the 2017 policy, that it believed that the renewal was timely with no gap in coverage, and that Plaintiff never was informed before it received Underwriters denial of coverage in April 2020 that the policy to which it agreed and for which it paid in March 2018 was a "new" policy, and not a "renewal." *Id.* at 16-23.

According to Plaintiff, the personal injury lawsuit against it was settled. *Id.* at 24. Plaintiff brings this action against Underwriters for its failure to defend the lawsuit under the policy that Plaintiff believes it timely renewed and against Inter-Ocean and Red Hook for their failure to inform Plaintiff of the expiration date of the 2017 insurance policy and the fact that the 2018 policy was a new policy and not a renewal of the 2017 policy. Plaintiff claims damages for defending the personal injury lawsuit in excess of $90,000.00, not including the settlement amount. Inter-Ocean, in its third-party complaint, claims that it is entitled to

indemnification and/or contribution from Cimmaron Property Management, Inc., the property management company that manages the property on behalf of Plaintiff, for any damages awarded to Plaintiff assessed against Inter-Ocean.

Red Hook now moves to dismiss the claims filed against it by Plaintiff.

## II. LEGAL STANDARD

### A. Failure to State a Claim - Rule 12(b)(6)

A complaint, or certain portions thereof, may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff*." In re Ins. Brokerage Antitrust Litig.*, 618 F. 3d 300, 314 (3d Cir. 2010). The Court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F. 3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F. 3d 223, 230 (3d Cir. 2010), *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F. 3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

### B. Motions to Strike – Rule 12(f)

Pursuant to Federal Rules of Civil Procedure 12(f),

> [t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). As this Court has stated:

> The court has "considerable discretion" in striking an allegation. *United States v. Southland Gaming of the V.I., Inc.*, 182 F. Supp. 3d 297, 317 (D.V.I. 2016). "The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" *Id.* (quoting *Steak Umm Co., LLC v. Steak 'Em Up, Inc.*, 2009 U.S. Dist. LEXIS 101357, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009)). Generally, a Rule 12(f) motion "should not be readily granted absent a showing of prejudice to the movant." *Glasser v. Gov't of the V.I.*, 853 F. Supp. 852, 854, 30 V.I. 97 (D.V.I. 1994).

*Dorval v. Tinsley*, Civ. No. 19-23, 2020 U.S. Dist. LEXIS 7215, at *13 (D.V.I. Jan. 15, 2020). *See also, e.g., Luciano v. Teachers Ins. & Annuity Ass'n of Am. — Coll. Ret. Equities Fund*, Civil Action No. 15-6726 (ZNQ) (DEA), 2022 U.S. Dist. LEXIS 64671, at *9 (D.N.J. Apr. 7, 2022) ("However, '[m]otions to strike are generally viewed with disfavor[] and will usually be denied unless the allegations in the pleading have no possible relation to the controversy[] and may cause prejudice to one of the parties.'" (citing *Gray v. BMW of N. Am.*, LLC, 22 F. Supp. 3d 373, 386 (D.N.J. 2014) (quoting *Sliger v. Prospect Mortgage, LLC*, 789 F. Supp. 2d 1212, 1216 (E.D. Cal. 2011))).

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 6 of 15

### III. DISCUSSION

Red Hook seeks to dismiss four counts of Plaintiff's FAC asserted specifically against Red Hook, namely, Count V – Negligence, Count VII -- Breach of Fiduciary Duty, Count IX -- Fraudulent Concealment, and Count XI -- Aiding and Abetting of Fraudulent Concealment, and one count asserted against all Defendants, Count XII -- RICO Claim, and to strike the allegations that pertain to non-party Guardian General Insurance Ltd. (Guardian General). ECF No. 25 at 2 and 3.

*A. Motion to Dismiss*

#### 1. Count V (Negligence) and Count VII (Breach of Fiduciary Duty)

Plaintiff states in its FAC that Counts V and VII are

> plead [sic] in the alternative to the first three Counts against [Underwriters]. Should the Court determine that the 2017 commercial general liability insurance contract terminated or expired in February of 2018, and there was no coverage from February 2, 2018 through March 11, 2018, then the following claim is asserted based upon the actions of the Defendant Red Hook.

FAC at ¶¶ 227 and 281. The Court has determined that the 2017 policy expired by its terms on February 1, 2018, and no insurance coverage existed from that date until the effective date of the 2018 policy, March 12, 2018. *See* Memorandum Opinion (ECF No. 92) at 8. Thus, the Court addresses these counts.

The elements for a claim of negligence are well settled. They include: "(1) a legal duty of care to the plaintiff; (2) defendant's breach of that duty of care; (3) factual and legal causation; and (4) damages." *Aubain v. Kazi Foods of the V.I., Inc.*, 70 V.I. 943, 948-949 (Sup. Ct. 2019) (citing *Coastal Air Transp. v. Royer*, 64 V.I. 645, 651 (Sup. Ct. 2016)). Similarly, in the Virgin Islands, a breach of fiduciary duty cause of action consists of four elements: "'(1) that a fiduciary relationship exists; (2) that the fiduciary breached the duty imposed by said relationship; (3) that the plaintiff must have been harmed; and (4) that the fiduciary's breach was the proximate cause of said harm.'" *Arvidson v. Buchar*, 72 V.I. 638, 645 (Super. Ct. 2020) (quoting *Guardian Ins. Co. v. Khalil*, 63 V.I. 3, 18 (Super. Ct. 2012)).

Red Hook argues that both Plaintiff's claim for negligence asserted in Count V of the FAC and the claim for breach of fiduciary duty in Count VII should be dismissed because Red Hook, as coverholder for Underwriters, acted solely as agent for Underwriters. ECF No. 26 at

7-8. Red Hook contends that it did not have an agency or fiduciary relationship with Plaintiff and, therefore, owed no duty to Plaintiff. *Id.* at 8.

Turning to the allegations of the FAC, Plaintiff states, "Upon information and belief, Red Hook holds itself out to the general public as being an approved 'coverholder' for [Underwriters]." *See* FAC at ¶ 11. Plaintiff's FAC continues by including the description/definition of "coverholder" supplied by Underwriters on its internet website. *Id.* at ¶ 12.[1] Plaintiff further alleges that Red Hook is both an insurance broker and agent. *Id.* at ¶¶ 36-41. Specifically, Plaintiff alleges that "[u]pon information and belief, Red Hook serves in a dual agency capacity, since at times it serves as an agent for the consumer and at times serves as agent for the insurance company." *Id.* at ¶ 41. In addition, Plaintiff alleges:

> 228. Inter-Ocean, as agent for Virgin Grand, contacted Red Hook to serve in the capacity as subagent for Inter-Ocean on behalf of Virgin Grand to procure commercial general liability insurance coverage for Virgin Grand's property.

> 229. Upon information and belief, as early as January of 2011, if not before then, Red Hook began serving in the capacity as an agent for Virgin Grand to procure commercial general liability insurance coverage for Virgin Grand's property.

> 230. Once Virgin Grand and Red Hook through Inter-Ocean came to an agreement on the procurement of commercial general liability insurance, Red Hook as an agent for Virgin Grand must exercise reasonable care, skill, good faith, and diligence in obtaining the requested insurance, as well those duties defined and required by the Virgin Islands Code. See e.g. 22 V.I.Code Ann. §§ 2, 5, 1201-1204, and 1209.

> 231. Upon information and belief, in the capacity as an agent for Virgin Grand to procure commercial general liability insurance coverage, Red Hook procured a policy with Lloyd's as early as January 2011, if not before then.

---

[1] The insurance policy contains this disclaimer regarding the coverholder:

> Agent or Coverholder Not Insurer. The Agent or Coverholder is not an insurer hereunder and is not liable for any loss or claim whatsoever. The Insurers hereunder are those individual Underwriters at Lloyd's, London whose names can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

ECF No. 26-1 at ¶ 2.

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 8 of 15

FAC at ¶¶ 228-231. However, merely because Plaintiff calls Red Hook a "sub-agent" for Inter-Ocean and "agent" for Virgin Grand, the use of such monikers do not, in themselves, grant them legal effect.[2] It is undisputed that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

Red Hook counters Plaintiff's allegations by citing the Virgin Islands Insurance Code which defines the terms *broker* and *agent* for purposes of the Code. ECF No. 26 at 7; 22 V.I.C. § 751a(b) and (d).[3] Further, according to the Code, a broker, that is, one who procures insurance on behalf of the insured, may also be appointed as an agent for an insurer. 22 V.I.C. §§ 751a(d) and 761. When a broker is appointed as an agent of an insurer, "The sole relationship between a broker and an insurer as to which he is licensed as an agent shall, as to transactions arising during the existence of such agency appointment, be that of insurer and agent." 22 V.I.C. § 761. This concept is echoed in the statutory definition of broker, stating that the person is acting on behalf of the insured when *not* being an agent of the insurer. 22 V.I.C. § 751a(d). As the Court interprets these Virgin Islands statutes and applies them to the matter at bar, if Red Hook was acting solely as coverholder on behalf of Underwriters and thus solely as Underwriters' agent, it could not have been acting on behalf of Plaintiff or in a dual capacity.

---

[2] Plaintiff cites to an Am. Jur. definition of *sub-agent* and to the Restatement (Second) and (Third) of Agency in support of its conclusions; but, Plaintiff offers no citation to Virgin Islands caselaw wherein such Restatement sections have been adopted by the courts of the Virgin Islands. Thus, the Court does not consider those provisions controlling. *See, e.g., Nicholas v. Damian-Rojas*, 62 V.I. 123, 129 n.5 (Sup. Ct. 2015) (noting that a recent case had undertaken a *Banks* analysis of Restatement (Second) of Agency § 219, but "[p]rior cases explicitly or implicitly relied upon 1 V.I.C § 4, now effectively repealed, such that courts of the Virgin Islands shall no longer "automatically and mechanistically" follow the provisions of the Restatements. *Banks*, 55 V.I. at 979").

[3] 22 V.I.C. § 751a(b) and (d) provide:

> (b) "Agent" means any person appointed by an insurer to solicit application for insurance on its behalf, and if authorized so to do, to effectuate and countersign insurance contracts except as to life or disability insurances, and to collect premiums on insurance so applied for or effectuated.
> (d) "Broker" means any person who, on behalf of the insured, for compensation as an independent contractor, for commission, or fee, and not being an agent of the insurer, solicits, negotiates, or procures insurance or reinsurance or the renewal or continuance thereof, or in any manner aids therein, for insureds or prospective insured other than himself.

In opposition to Red Hook's motion, Plaintiff maintains that whether Red Hook was acting in a dual capacity as agent for Underwriters and agent for Plaintiff is a question of fact that cannot be resolved by a motion to dismiss. ECF No. 44 at 9. In support of its contention, it cites to *Towers Condo. Ass'n v. C.E. Brathwaite & Assocs.*, 40 V.I. 33 (Terr. Ct. 1999), where the court states, "The question of whether an insurance broker is the agent of the insured is generally one of fact." *Id.* at 43 (citing *Lazzaro v. Esser*). The *Towers* court declined to apply 22 V.I.C. § 761 (then Section 755) because it found that it was not clear from the facts whether Defendant C.E. Brathwaite & Associates was acting under the agency agreement it had with the insurer or purely as broker on behalf of the insured. 40 V.I. at 42-43.

Here, however, the Court finds that, considering Plaintiff's factual allegations as true and disregarding conclusory allegations, Plaintiff fails to allege facts sufficient to support its conclusion that Red Hook acted as either a sub-agent for Inter-Ocean or agent for Plaintiff. Plaintiff alleges that it requested Inter-Ocean to procure commercial general insurance liability insurance for its property. FAC at ¶ 45. Inter-Ocean, in turn, contacted Red Hook, FAC at ¶ 48, for such insurance. Red Hook, as coverholder for Underwriters, was authorized to "'enter into contracts of insurance and issue insurance documents as evidence that contracts of insurance have been accepted.'" FAC at ¶ 12 and n.1 (quoting the Lloyd's internet website at https://www.lloyds.com/conducting-business/delegated-authorities/compliance-and-operations/about-coverholders). At all times relative to the insurance policies at issue, the facts, as alleged by Plaintiff, show that Inter-Ocean acted as broker on behalf of Plaintiff, which secured the policy from Underwriters through Red Hook, as Underwriters' agent/coverholder. This conclusion is supported by Plaintiff's allegations that:

> As part of the renewal process, Virgin Grand requested Inter-Ocean to provide written notice of the pending policy renewal to Virgin Grand's property manager, Cimmaron Property Management, Inc., (hereinafter Cimmaron).
>
> Inter-Ocean agreed to provide written notice of the pending policy renewal for Plaintiff's policy to Plaintiff's property manager, Cimmaron. See e.g. Exhibit 2, Bates No. CPM 0221.
>
> Upon information and belief, each year when time for renewal approached, Lloyd's would inform Red Hook of Lloyd's willingness to renew the

> commercial general liability insurance policy. Red Hook, in turn, would notify Inter-Ocean, who, in turn, would inform Virgin Grand of Lloyd's willingness to renew the policy and provide a renewal application along with the annual premium amount to Virgin Grand's property manager, Cimmaron.

FAC at ¶¶ 54-56. The allegations acknowledge that Red Hook's sole role in the transaction was as agent/coverholder for Underwriters, and, as such, it was informed of Underwriters' decision to renew the policy and, in turn, informed Inter-Ocean of that decision.

Even if applying the criteria set forth by the *Towers* court is required to determine whether an agency relationship existed between Plaintiff and Red Hook, such analysis results in the same conclusion. The *Towers* court declares: "To determine whether an agency relationship existed between an insured and a broker, courts have looked at the following criteria: (1) who called the intermediary into action; (2) who controls the actions of the intermediary; (3) who pays the intermediary; and (4) whose interests does the intermediary represent." *Towers*, 40 V.I. at 42 (citing *Lazzara v. Howard A. Esser, Inc.*, 802 F. 2d 260 (7th Cir. 1986)). *See also Ross v. AARP Servs.*, Civil Action No. 1:19-cv-57, 2021 U.S. Dist. LEXIS 62637, at *12 (D.V.I. Mar. 31, 2021) (where the court states, "Here, plaintiffs must plead facts regarding the parties' conduct: if the principal has the ability to control the conduct of the alleged agent, then an agency relationship may be inferred" (citing *Roberts v. Gonzalez*, 495 F. Supp. 1310, 1314, 17 V.I. 571 (D.V.I. 1980) ("A principal has the right to control the conduct of the agent with respect to matters entrusted to him." (quoting Restatement (Second) of Agency §14)) (no agency relationship where alleged principal could not control alleged agent's conduct))). As succinctly stated by Red Hook:

> Plaintiff has acknowledged that it was Underwriters who called Red Hook into action. (Doc. 36, p. 4). Delegated as "coverholder" on the Policies, Red Hook was under the control of Underwriters who paid Red Hook in accordance with the terms of a Binding Authority. Furthermore, Plaintiff provided authority to sign the renewal application and paid the premiums to Inter-Ocean, not Red Hook, and "requested Inter-Ocean, and Inter-Ocean agreed, to provide written notice to [Plaintiff's] property manager... each year when it was time to renew [Plaintiff's] commercial general liability policy." (Doc. 36, p. 4).

ECF No. 44 at 6. Plaintiff has not alleged that Red Hook's actions were controlled by Plaintiff or Inter-Ocean and not Underwriters or that Red Hook was paid by Plaintiff or Inter-Ocean

and not Underwriters. The FAC is silent regarding any allegations that Red Hook represented Plaintiff's interests and not Underwriter's interests.

Based upon the foregoing, the Court finds that Red Hook did not owe any duty, fiduciary or otherwise, to Plaintiff. Consequently, the Court will grant Red Hook's motion to dismiss as to Counts V and VII.

### 2. Count IX (Fraudulent Concealment) and Count XI (Aiding and Abetting Fraudulent Concealment)

These two Counts, Plaintiff asserts, are

plead [sic] in the alternative to the first three Counts against [Underwriters]. Should the Court determine that the 2017 commercial general liability insurance contract terminated or expired in February of 2018, and there was no coverage from February 2, 2018 through March 11, 2018, then the following claim is asserted based upon the actions of the Defendant Inter-Ocean [sic].[4]

FAC at ¶¶ 314 and 331. The Court has determined that the 2017 policy expired by its terms on February 1, 2018, and no insurance coverage existed from that date until the effective date of the 2018 policy, March 12, 2018. *See* Memorandum Opinion (ECF No. 92) at 8. Thus, the Court addresses these Counts.

The Virgin Islands recognizes a fraudulent concealment cause of action.

To state a claim for fraudulent concealment, a plaintiff must plead that: (1) the defendant concealed or suppressed a material fact; (2) the defendant had a duty to disclose the fact to the plaintiff; (3) the defendant knew or had reason to know that the material fact had been concealed or suppressed; (4) the defendant concealed or suppressed the material fact for the purpose of inducing the plaintiff to act or refrain from acting; and (5) the plaintiff suffered pecuniary loss caused by the his or her justifiable reliance on the concealed or suppressed material fact.

*Government of the U.S. Virgin Islands v. Takata Corp.*, 67 V.I. 316, 417 (Super. Ct. 2017).[5]

Regarding the second element, the *Takata* court continues:

---

[4] Although the quoted allegations refer to Inter-Ocean, this apparently is a typographical error as the allegations follow immediately after the Counts' heading stating the counts are asserted against Red Hook.
[5] As this Court has stated regarding fraud:

To sufficiently plead fraud, a plaintiff must demonstrate, "(1) a false representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to

> [T]he Court concludes that the soundest rule for the Virgin Islands with respect to the duty to disclose is as follows:

>> Whether the defendant had a duty to disclose is determined by the facts and circumstances of the case, through an application of the following factors: (1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.

*Id.* at 417-18 (footnote omitted).

> In support of its claims, Plaintiff alleges that:

>> [i]n derogation of its fiduciary duty as agent for Virgin Grand, Red Hook failed to inform Virgin Grand, prior to February 1, 2018, that Lloyd's was willing to renew the commercial general liability insurance policy with Virgin Grand, and failed to verify with Inter-Ocean that Inter-Ocean sent to Virgin Grand the renewal application, along with the premium amount and the date and time the 2017 policy would expire.

FAC at ¶ 291. Despite the conclusory opening clause of this allegation, the Court has established herein that Red Hook was not acting as agent for Plaintiff with respect to the insurance contracts at issue, and, thus, owed no fiduciary duty to Plaintiff.

Regarding the other allegations contained in this paragraph, Plaintiff acknowledges that Red Hook communicated Underwriters' willingness to renew the 2017 policy to Plaintiff's agent/broker, Inter-Ocean. *See* FAC at ¶ 290 (where Plaintiff alleges "Upon information and belief, on January 10, 2018[,] Red Hook sent to Inter-Ocean a written reminder via email that it was time to inform Virgin Grand that [Underwriters] was willing to renew the commercial general liability insurance policy with Virgin Grand, and to send

---

deceive," and (5) detrimental reliance, or "action taken in reliance upon the representation." *Fin. Trust Co., Inc. v. Citibank, N.A.*, 351 F. Supp. 2d 329, 332, 46 V.I. 435 (D.V.I. 2004); *Shillingford v. Hess Oil of the V.I.*, 2009 U.S. Dist. LEXIS 53371, at *28-29 (D.V.I. June 18, 2009). A fraudulent inducement claim has essentially the same elements as common law fraud. *Beachside Assocs., LLC v. Okemo Ltd. Liab. Co.*, 50 V.I. 1042, 1047 (D.V.I. 2008) (citing *Charleswell v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545, 568-69, 45 V.I. 495 (D.V.I. 2004)).

*Kiskidee, LLC v. Certain Interested Underwriters at Lloyd's of London*, Civil Action No. 2009-077, 2012 U.S. Dist. LEXIS 38289, at *6-7 (D.V.I. Mar. 21, 2012).

the renewal application, along with the premium amount and the date and time the 2017 policy would expire. *See* Exhibit 16, Bates No. CPM 275-276"). In addition, no duty to inform Plaintiff directly or to verify that Plaintiff's agent/broker, Inter-Ocean, had informed Plaintiff of Underwriters' willingness to renew the 2017 policy was imposed upon Red Hook by the contract or other agreement.

The alleged "fraud" underlying the fraudulent concealment claim, according to Plaintiff, involved the alleged "alteration" of the application for insurance from a "renewal" application to a "new" application. *See* FAC at ¶¶ 296-302. Plaintiff further alleges that Red Hook "aided and abetted" the same fraud as perpetrated by Inter-Ocean. *See* FAC at ¶¶ 332-338. However, as the Court found in its Memorandum Opinion accompanying the Order granting Underwriter's motion to dismiss, Plaintiff is charged with knowing the contents of its contracts and, here, did know that its 2017 insurance policy expiration date was February 1, 2018. *See* ECF No. 92 at 11. Thus, even if the application for the 2018 policy, dated March 6, 2018, originally was marked "renewal," Plaintiff knew or should have known that the 2017 policy had expired by its terms on February 1, 2018. No matter how the binding document or application was designated or denominated, the nomenclature, by itself, could not revive a contract that already had expired. At the time of the submission of Plaintiff's application on March 6, 2018, no insurance policy was in place, notwithstanding Plaintiff's unfounded belief that the 2017 policy somehow was still in effect. Thus, there was no insurance policy in effect to *renew*. Consequently, Plaintiff cannot show that Red Hook either made a false statement or knew of its falsity and did so with an intent to deceive.

Moreover, the Court reiterates here that Plaintiff has not alleged or described *detrimental* reliance upon the alleged altered application. *See* ECF No. 92 at 11. The Court cannot conceive how submitting the 2018 application, even if nominally altered as alleged, and securing the insurance was detrimental to Plaintiff.

In addition, *assuming arguendo*, that Plaintiff had been informed that the 2018 policy was a new policy and not a renewal of the 2017 policy before the insurance was placed, any harm from the lapsing of 2017 policy already had occurred in relation to the personal injury suit where the underlying incident occurred on February 23, 2018, nearly two weeks before

the date the application was submitted. Thus, Plaintiff cannot show that any alleged "alteration" of the application caused the "pecuniary losses" associated with the lawsuit.

Further, these two counts allege fraud, which require a heightened pleading standard. Fed. R. Civ. P. 9(b). *See also, e.g., Grant v. Turner*, 505 Fed. App'x 107, 111 (3d Cir. 2012) ("Federal Rule of Civil Procedure 9(b) creates heightened pleading requirements for allegations of fraud, requiring the plaintiff to 'state with particularity the circumstances constituting fraud.'"). As Red Hook argues, Plaintiff fails to allege or show "justifiable" reliance upon any alleged "representations" made by Red Hook. ECF No. 26 at 12. For example, the Third Circuit declares in *Kennedy v. American Airlines Inc.*, 760 Fed. App'x 136, 141 (3d Cir. 2019), that "reasonable reliance is an element of both legal and equitable fraud." *Id.* (where the Court cites favorably *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F. 3d 797, 811 (5th Cir. 2017) (noting a party cannot *reasonably rely* on a representation if that party knows the representation to be false) and Restatement (Second) of Torts § 541 (1977) ("The recipient of a fraudulent misrepresentation is not *justified* in relying upon its truth *if he knows that it is false* or its falsity is obvious to him." (emphasis added))). Here, Plaintiff knew the expiration date of the 2017 insurance policy was February 1, 2018, and, therefore, was not justified in relying upon the binding document or application, submitted March 6, 2018, marked "renewal."

For the foregoing reasons, the Court finds that Plaintiff has failed to plead sufficient facts to maintain Counts IX and XI and will grant Red Hook's motion as to those counts.

### 3. Count XII – RICO Claim

The Court considered the RICO claim when deciding Defendant Underwriters' motion to dismiss and/or strike. The Court found there that Plaintiff fails to allege sufficient facts to state a valid RICO claim because Plaintiff fails to adequately allege an "enterprise" and a "pattern of racketeering activity," ECF No. 92 at 15-17, and the Court dismissed the count as to Underwriters. Order (ECF No. 93). The Court fully incorporates the reasoning stated in its Memorandum Opinion docketed at ECF No. 92 as if fully stated herein and will dismiss Count XII in its entirety.

*Virgin Grand Estates #60 Villa Ass'n v. Certain Underwriters at Lloyd's, London et al.*
Case No. 3:21-cv-0074
Memorandum Opinion
Page 15 of 15

### B. Motion to Strike

Red Hook moves to strike the allegations in the FAC regarding non-party Guardian General Insurance, Ltd. (Guardian General). Underwriters declares that those allegations, ¶¶ 65-82 of the FAC, "address a completely unrelated insurer, Guardian General, and a completely unrelated insurance claim submitted by the Plaintiff." ECF No. 28 at 20. Plaintiff counters that the allegations show the relationship between Plaintiff and Inter-Ocean and thus support their claims against Inter-Ocean and Red Hook. ECF No. 41 at 28.

Because the Court will dismiss the counts of the complaint pertaining to Red Hook, the Court need not consider Hook's alternative motion to strike and will deny it.

### IV. CONCLUSION

Because the Court finds that Plaintiff has not plausibly alleged that Red Hook acted as its agent (or sub-agent of Inter-Ocean) with respect to the insurance contracts at issue, and, thus, that Red Hook did not have an agent/fiduciary relationship with Plaintiff or otherwise owe a duty to Plaintiff as alleged in the FAC, dismissal of Counts V and VII is warranted, and the Court will grant Red Hook's motion as to those Counts. The Court's finding that Plaintiff fails to plausibly allege fraudulent concealment in Counts IX and XI entitles Red Hook to dismissal of those counts, as well. Further, the Court will dismiss Count XII in its entirety as to all Defendants. The Court, however, exercises its discretion and will deny Red Hook's motion to strike. An appropriate order follows.

**Dated:** October 12, 2022                    */s/ Robert A. Molloy*
                                               **ROBERT A. MOLLOY**
                                               **Chief Judge**